UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID EDWARD ESPINAL,

Petitioner,

v.

LAURA ELDRIDGE,

Respondent.

Case No. 20-cv-02049-WHO (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner David Edward Espinal seeks federal habeas relief from his state convictions for murder and robbery. None of his claims is based on clearly established law. For that reason among others, each claim fails. The petition for habeas relief is DENIED.

## BACKGROUND

In 2015, Espinal (along with co-defendant Donald Parker) was convicted by a Sonoma County Superior Court jury of first degree murder and second degree robbery, and the jury found true a robbery-murder special circumstance allegation that the murder was committed while the defendants were engaged in the attempted commission of a robbery. The jury also found true allegations that Espinal had personally been armed with a firearm; had personally used and intentionally discharged a firearm causing great bodily injury; and had prior "strike" convictions. A sentence of life in prison without the possibility of parole, consecutive to terms of 25 years to life and 32 years, was imposed. (Ans., State

Appellate Decision[1], Dkt. No. 8-26 at 182, 185; Pet., Dkt. No. 1 at 2, 11.)

In 2014, Espinal shot and killed the victim, Max Weinreb, during a purported drug sale. The state appellate court summarized the facts as follows:

> 'Noe,' who testified pursuant to an immunity agreement and understanding that his last name would be shielded, testified that he was friends with the victim, Max Weinreb, and had periodically supplied him with marijuana. On August 31, 2014, Weinreb called Noe in the morning and told him he wanted to buy 10 pounds of marijuana. Around 5:00 p.m. that afternoon, Noe brought two pounds of marijuana to a park where he met with Weinreb and Parker. After Parker approved the quality of the marijuana, Weinreb told Noe to pick up the remaining quantity and bring it to him.
>
> Noe retrieved the rest of the marijuana and returned to meet Weinreb and Parker. He was concerned, however, because he had noticed, as he was leaving the park, what looked like the outline of a gun in Parker's pants and the situation 'didn't feel comfortable' to him. He picked up two friends on his way back because he thought that having more people present would ensure that 'nothing would happen.'
>
> Noe met Weinreb and Parker at a store and they caravanned to a motel in Santa Rosa. On the ride, Noe called Weinreb and told him that Parker had a gun. Weinreb was 'a little bit concerned' but responded, 'we'll just play it by ear.' Once parked, Weinreb told Noe that Parker's 'boy is going to check it out,' in reference to the marijuana. Noe gave Weinreb a one-pound bag of marijuana, wrapped in a towel, to show Parker's friend. Weinreb took the marijuana to a motel room with Parker. A few minutes later, Weinreb called Noe to confirm that the sale was on. When Noe expressed concern about the deal, Weinreb told him, 'It's all good. I'm strapped up bro,' and flashed a gun in a hip holster. Weinreb and Noe took the ten-pound bag of marijuana to the motel room. Espinal rolled a 'blunt' and offered it to Weinreb and Noe, but they declined.
>
> Noe was nervous and gradually inched towards the door. He noticed Parker looking at his waist and thought Parker was checking him for weapons. Then, Parker opened the curtains and the window. When Weinreb told Espinal to check the rest of the marijuana and 'give us the money,' Espinal looked at Parker and said, 'You ready, bro?' Parked replied, 'Yeah, yeah, it's all good. Just give him the money.' Espinal then lifted his shirt and reached his right hand into his waistband. Fearing they were going to be robbed, Noe

---

[1] *People v. Espinal*, No. A146411, 2019 WL 761578 (Cal. Ct. App. Feb. 20, 2019).

yelled 'Aaaaaahhhh,' swung open the door, and ran out of the motel room. As soon as he was out of the room, he heard three gunshots.

When Noe returned to the room a few minutes later to look for Weinreb, he found his body on the floor. Noe flagged down a police officer, shouting 'Help him. Help him. He's been shot. He's been shot.' After checking Weinreb's vital signs, the officer informed Noe that Weinreb was dead. Noe told the officer that the shooters, 'two Black guys had left in a red Charger.' In a search of the room, a firearm was retrieved from under Weinreb's right leg and a roll of duct tape was found under a pillow on one of the beds. Subsequent testing revealed Parker's fingerprint on the inside of the duct tape roll.

That evening two African-American men in a red Dodge Charger led police on a high speed chase before evading arrest. Defendants were identified and arrested within weeks.

The prosecution introduced testimony regarding three prior robberies committed by Parker and a prior robbery of a Postage Plus store in November 2006 for which Espinal was convicted and sent to prison.

Espinal testified on his own behalf. He admitted that he sold marijuana for a living and that he shot and killed Weinreb. He said he had been purchasing marijuana from Parker for about four months before the incident, typically buying two pounds at a time. On August 31, 2014, he called Parker to buy marijuana, but Parker did not have enough affordable marijuana to fill his order. Instead, Parker arranged for him to buy 10 pounds from Weinreb for $1,200 per pound. Espinal testified that he had $7,000 left from an inheritance in 2006 and that his sister had given him another $7,000 in 2014. He brought only $10,000 to the motel, however, as he was hoping to negotiate the price down. When confronted with the fact that he robbed Postage Plus in November 2006, after he supposedly had come into this large sum of money, Espinal claimed that he 'spent' his inheritance too quickly. Espinal claimed that he put the $ 10,000 in a 'jock strap' in his underwear because he was on parole and was afraid he would be arrested if he got pulled over with a large quantity of cash. Espinal acknowledged that under the terms of his parole he was prohibited from carrying a weapon but brought a .357-magnum gun for protection because 'it's dangerous business.' He hid the gun under his seat during the drive from Sacramento. Espinal said that Parker was in the car when he put it under the passenger seat.

At the motel, Espinal said that Weinreb brought a one-pound bag of marijuana into the room. Espinal claimed that after he showed Weinreb his money, Weinreb went out to his car to retrieve the rest of the marijuana.

3

> Weinreb came back with Noe and Parker. Once Espinal checked the marijuana in the large bag, Weinreb requested the money. Espinal claimed that he lifted his shirt to retrieve the money from his jock strap, causing Noe to scream and run from the room. Espinal looked at Weinreb, who was trying to pull a gun from his holster. Espinal reached behind his back and pulled out his gun. He shot Weinreb, with the first shot hitting him in the stomach and spinning him around. Espinal shot him twice more in the back, and Weinreb dropped his gun. Espinal claimed that he was 'scared to death of the man. I was fearing for my life, man.'
>
> Parker and Espinal both jumped through the window, taking the large bag of marijuana, and ran to the red car. Parker sped away, but Espinal denied that they were ever chased by the police. They drove 'up in some hills' near Petaluma and stayed there for about four hours. Espinal sold the 10 pounds of stolen marijuana. Among other things, he 'partied a little bit and went to Vegas' with the sale proceeds. He claimed that he bought a roll of duct tape the morning of the shooting to seal the bags of marijuana.
>
> Detective Patrick Albini was qualified as an expert on marijuana cultivation and narcotics sales. He testified that in his many years as a narcotics detective he had 'never come across a bag of marijuana sealed with duct tape.' He also testified that the motel was known to be a common location for drug deals and that he had previously investigated a 'marijuana ripoff' that occurred in a hotel room.

(Ans., State Appellate Opinion, Dkt. No. 8-26 at 182-185.)

Espinal's attempts to overturn his convictions in state court were unsuccessful. (Pet., Dkt. No. 1 at 3-5.) This federal habeas petition followed.

As grounds for federal habeas relief, Espinal alleges his federal constitutional rights were violated by (i) the admission of Espinal's and Parker's prior act evidence; (ii) the denial of a motion to sever his trial from Parker's; and (iii) the denial of access to juror contact information.[2]

---

[2] In the Order to Show Cause, I identified another claim, one of instructional error. (Dkt. No. 7 at 2.) Respondent states he has been "unable to discern an instructional error claim in the petition." (Ans., Dkt. No. 8-1 at 9, n.1.) In his petition, Espinal speaks repeatedly about jury instructions in his description of his claims. At initial screening, I felt that this merited a separate claim requiring separate consideration. However, it is clear that a separate claim is unnecessary. Espinal's instructional error allegations are sufficiently addressed in my analysis of his other claims. The free-standing instructional error claim identified in the Order to Show Cause is dismissed.

4

**STANDARD OF REVIEW**

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), this court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

**DISCUSSION**

**i. Admission of Prior Act Evidence**

The trial court admitted evidence of a prior robbery committed by Espinal, and evidence of three prior robberies committed by his co-defendant Parker. (Ans., State Appellate Opinion, Dkt. No. 8-26 at 186-187.) Espinal claims that his due process rights were violated by the admission of his prior act evidence, specifically that he robbed a Postage Plus store in Merced in November 2006. (Pet., Dkt. No. 1 at 6.) After he and another man entered the store, Espinal jumped over the counter to rob the register (taking $1,200), while the other man held a gun to a customer's neck. (Ans., State Appellate Opinion, Dkt. No. 8-26 at 187.) Espinal testified at trial that he had committed the 2006 crime and had been convicted of robbery. (*Id.*) The admission of evidence of his prior crime violated due process, Espinal contends, because his prior crime was remote in time, unrelated to the charged crime, and could have only prejudicial effects. (Pet., Dkt. No. 1 at 7.)

Espinal also contends he was prejudiced by the admission of evidence of Parker's prior crimes. (Pet., Dkt. No. 1 at 7-8.) Espinal contends that after trial one juror "clearly conveyed that the jurors as a group had discussed Parker's prior 2006 robbery as strone [*sic*] confirmation that [petitioner] Espinal intended to commit a robbery on August 31, 2014." (*Id.* at 8.) The juror "specifically focused on the factor that Parker used duct tape in the 2006 robbery, and that Espinal brought duct tape to the August 31, 2014 encounter." (*Id.*)

The trial court instructed the jury how to regard the prior crime evidence. The jury was told that it first had to decide whether the prosecution had proved by a preponderance of the evidence that the defendant had committed the prior crime. (Ans., State Appellate Opinion, Dkt. No. 8-26 at 187.) If the jurors found the evidence credible they could but were not required to "consider that evidence for the limited purpose of deciding whether or not the defendant acted with the intent to commit the robbery in this case." (*Id.*) Furthermore, the evidence was not to be used for any other purpose; it was not sufficient

6

by itself to prove the defendant guilty of robbery; it was only one factor to consider along with all the other evidence; the prosecution still had to prove every charge beyond a reasonable doubt; evidence that a defendant had committed a prior crime could be used against only that defendant, not the other; and jurors were not to "conclude from this evidence that the defendant has a bad character or is disposed to commit crime." (*Id.*) These instructions were given before presentation of the evidence, and again before closing arguments. (Ans., Clerk's Transcript, Dkt. No. 8-20 at 64-65; Dkt. No. 8-24 at 28, 33-34.)

This claim was rejected on appeal because any error was harmless. Espinal's prior robbery "was considerably less inflammatory than the charged murder." (Ans., State Appellate Opinion, Dkt. No. 8-26 at 190.) Also, because Espinal had been convicted of the prior crime, "there was little risk the jury would punish him for unpunished misconduct." (*Id.*)

Furthermore, there was no prejudice because "there was substantial evidence of Espinal's intent, apart from any inference that might have been drawn by the jury based on his participation in the prior robbery." (*Id.*) After Parker inspected Noe and Weinreb for weapons and opened the window, Espinal said, "You ready, bro?" (*Id.* at 183, 190.) Such evidence "provided compelling support for the finding that they had a plan and intended to rob Weinreb and flee." (*Id.* at 183.)

Also, the state appellate court concluded that Espinal's testimony in his defense was heavily undermined. His assertion he had $10,000 to bring and buy the marijuana was "substantially impeached" on cross-examination.[3] (*Id.*) In addition, his explanation why

---

[3] The appellate court is likely referring to the following: "When confronted with the fact that he robbed Postage Plus in November 2006, after he supposedly had come into this large sum of money, Espinal claimed that he 'spent' his inheritance too quickly. Espinal claimed that he put the $10,000 in a 'jock strap' in his underwear because he was on parole and was afraid he would be arrested if he got pulled over with a large quantity of cash." (Ans., State Appellate Opinion, Dkt. No. 8-26 at 184.) Such caution was not sufficient to prevent Espinal from bringing a gun to the meeting, despite a parole condition that forbade him from carrying a weapon. (*Id.*) I have reviewed Espinal's cross-examination and find that it supports the appellate court's determination that his testimony was heavily impeached. (Ans., Reporter's Transcript, Dkt. No. 8-23 at 64-66, 112-113.)

7

he brought duct tape was "largely impeached by the police expert [Detective Patrick Albini]." (*Id.*)

The appellate court also rejected Espinal's contention regarding jurors' responses to after-trial questions. "Counsel's suggestion that the jurors may have considered Parker's prior criminal use of duct tape as evidence against Espinal is not supported by any evidence in the record." (*Id.* at 203.)

Espinal's claim cannot succeed because no remediable constitutional violation occurred. The United States Supreme Court has left open the question of whether admission of propensity evidence violates due process. *Estelle v. McGuire*, 502 U.S. 62, 67-71 (1991). Based on the Supreme Court's reservation of this issue as an "open question," the Ninth Circuit has held that a petitioner's due process right concerning the admission of propensity evidence is not clearly established as required by AEDPA. *Alberni v. McDaniel*, 458 F.3d 860, 866-67 (9th Cir. 2006).

Furthermore, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Walden v. Shinn*, 990 F.3d 1183, 1204 (9th Cir. 2021) (quoting *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009)). Even if the evidence of Espinal's and Parker's prior crimes was irrelevant or prejudicial, no habeas relief is warranted.

Espinal's contention that the jury instructions were insufficient to prevent the jury from using Parker's prior crimes against petitioner is without basis. The state appellate court rejected as unsupported his Espinal's contention regarding the jurors' post-trial statements. Such factual determinations by the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Espinal has not overcome this presumption of correctness. This court must presume that the jurors followed their instructions and used the prior crimes evidence as instructed. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).

In sum, because the Supreme Court expressly has left open the question presented in the petition, Espinal's claim that the trial court's admission of Espinal's and Parker's

8

United States District Court
Northern District of California

prior crime evidence violated his due process rights is without merit. The state court's rejection of this claim was reasonable and is entitled to AEDPA deference. This claim is DENIED.

ii. **Denial of Motion to Sever**

After the trial court admitted evidence of Parker's prior offenses, Espinal moved to sever his trial from Parker's. The motion was denied. "[T]he evidence of the prior offenses is no more prejudicial to one than the other and they both have prior instances that fit within the description of [the] complaint." (Ans., State Appellate Opinion, Dkt. No. 8-26 at 191.) Espinal claims that the denial of his motion to sever violated his due process right to a fair trial. He contends that despite the trial court's limiting instructions, he suffered prejudice by the admission of evidence of Parker's prior crimes. (Pet., Dkt. No. 1 at 8-9.)

This claim was rejected on appeal because this was a "classic case for a joint trial."[4] (Ans., Dkt. No. 8-26 at 191.) The defendants faced the same charges that arose from the same acts against the same victim. (*Id.*) "If the trials had been severed, the same witnesses would have had to testify about the same events twice." (*Id.*) Furthermore, the trial court's explicit limiting instructions "minimized" any possible prejudice. (*Id.*)

Habeas relief is not warranted because "there is no clearly established federal law requiring severance of criminal trials in state court even when the defendants assert mutually antagonistic defenses." *Runningeagle v. Ryan*, 686 F.3d 758, 777 (9th Cir. 2012). The state court's rejection of this claim was reasonable and is entitled to AEDPA deference. This claim is DENIED.

iii. **Denial of access to juror contact information**

After trial, Espinal's counsel filed a declaration in which he asked the court to disclose juror contact information. (Ans., State Appellate Opinion, Dkt. No. 8-26 at 203.) The declaration asserted that the jurors may have ignored the court's limiting instructions

---

[4] In this and the following quotation, the state appellate court quotes language from the Attorney General. (Ans., Dkt. No. 8-26 at 191.)

9

and used the evidence of Parker's prior crimes against Espinal. (*Id.*) This belief arose from discussions with jurors after trial, which "led him to believe that the duct tape found under the pillow was a key piece of evidence showing that Parker and Espinal had planned to rob Weinreb." (*Id.*) The trial court denied the motion following a hearing at which "several jurors were present and expressed their opposition to the release of the information." (*Id.*) The trial court stated the "juror's posttrial statements do not demonstrate a failure to follow its instructions." (*Id.*) Espinal contends the denial of the disclosure request violated his due process rights. (Pet., Dkt. No. 1 at 9-10.)

This claim was rejected on appeal. "Counsel's suggestion that the jurors may have considered Parker's prior criminal use of duct tape as evidence against Espinal is not supported by any evidence in the record and provides no basis for the release of the jurors' identifying data." (Ans., State Appellate Opinion, Dkt. No. 8-26 at 203.) Furthermore, the duct tape was evidence of planning relevant to both defendants. "Indeed, Espinal testified that he purchased the tape and brought it to the room." (*Id.*)

Habeas relief is not warranted because there is no clearly established right to the disclosure of juror contact information. *Pha v. Swarthout*, 658 F. App'x 849, 851 (9th Cir. 2016) ("Pha identifies no Supreme Court decision addressing a defendant's entitlement to written discovery upon suggestion of juror misconduct"); *Cabrera v. Macomber*, No. 1:15-cv-01547-LJO-EPG-HC, 2018 WL 3770040, at *14 (E.D. Cal. Aug. 7, 2018) ("Petitioner does not provide, and the Court has not found, a Supreme Court case requiring a state court to allow post-trial access to jurors' personal identifying information."); *Batson v. Santoro*, No. ED CV 17-1334 PA (RAO), 2018 WL 6706054, at *13 (C.D. Cal. Oct. 29, 2018) ("[T]he Supreme Court has never addressed a defendant's entitlement to juror contact information to investigate potential misconduct."); *Zamora-Smith v. Davies*, No. CV 14-6032-GW (AGR), 2017 WL 3671859, at *3 (C.D. Cal. Aug. 23, 2017) ("[T]he Supreme Court has not addressed whether there is a constitutional right to access to jurors' personal contact information."); *McKinstry v. Chappell*, No. 1:13-cv-00088 AWI MJS (HC), 2014 WL 5485607, at *23 (E.D. Cal. Oct. 29, 2014) ("[T]he Court is unaware of Supreme Court

authority requiring jurors identifying information to be disclosed.") Because there is no clearly established right to such juror information, the state court's rejection of Espinal's claims was reasonable and is entitled to AEDPA deference. This claim is DENIED.

## CONCLUSION

The state court's adjudication of Espinal's claims did not result in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law, nor did they result in decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Espinal may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

The Clerk shall enter judgment in favor of respondent, and close the file.

**IT IS SO ORDERED.**

**Dated:** July 12, 2021

_____
WILLIAM H. ORRICK
United States District Judge